**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

CARL ADKINS                                                                                      PLAINTIFF

v.                                                            CIVIL ACTION NO.  5:24-CV-P71-JHM

JASON DENNY *et al.*                                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A.  For the reasons set forth below, the Court will dismiss some claims and allow others to proceed.

## I.

Plaintiff Carl Adkins is incarcerated as a convicted prisoner at Kentucky State Penitentiary (KSP).  He brings this action against Kentucky Department of Corrections (KDOC) Commissioner Cookie Crews, in her official capacity only, and three KSP officials, in both their official and individual capacities – Warden Laura Plappert, Sergeant Benjamin Alexander, and Captain Jason Denny.

In the complaint, Plaintiff first alleges that he was placed in KSP's Restrictive Housing Unit (RHU) from October 25, 2023, until November 9, 2023, upon the issuance of a detention order authorized by Defendant Denny.  Plaintiff states that he wrote to Defendant Plappert on November 6, 2023, explaining the "potential illegality" of the detention order but that she failed to intervene.  Plaintiff also states that upon his release from the RHU, he discovered that several hygiene products and clothing items were missing from his personal property.  Based upon these allegations, Plaintiff alleges that Defendants Denny, Plappert, and Crews violated his Fourth

Amendment right to be secure from the illegal seizure of his property and his Fourteenth Amendment rights to due process and equal protection.

In the second set of allegations set forth in the complaint, Plaintiff alleges that he was placed in the RHU on November 23, 2023, "allegedly due to him being in possession of dangerous contraband." He states that once placed in the RHU, he was denied a mattress and ordered to surrender his smock by Defendant Alexander, based on orders from Defendant Denny, who stated that Plaintiff had been observed tampering with his "bandaged forearms." Plaintiff further asserts that when he refused to surrender his smock, Defendant Alexander opened the tray slot of his cell door and sprayed "OC spray"[1] in his cell. Plaintiff asserts that Defendant Alexander did the same thing a few moments later. Plaintiff states that he was then removed from his cell and offered medical treatment, which he refused, and that when he was placed back in the RHU cell the walls and floors had orangish-red stains from the OC spray. Plaintiff alleges that he asked Defendant Alexander to "decontaminate" his cell, but that Defendant Alexander refused. Plaintiff additionally states that for at least 14 hours he had only a pair of paper boxes, but no mattress or smock. Plaintiff also alleges that that when he was walking around his cell on November 24, 2023, Defendant Alexander ordered an unidentified officer to spray Plaintiff with OC spray, ostensibly for no reason. Plaintiff alleges that he was then removed from his cell and offered medical treatment which he again refused. Plaintiff states that he again requested that the remnants of OC spray on his wall be removed but that this request was ignored. Based upon these allegations, Plaintiff alleges that Defendants Alexander, Denny, Plappert, and Crews violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff seeks damages as well as declaratory and injunctive relief.

---

[1] Oleoresin capsicum spray, or "OC spray," is a form of pepper spray.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will  not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

This Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v.*

*Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).  And a court is not required to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require a court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983.  *Gomez v. Toledo*, 446 U.S. 635 (1980).  "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A.   Official-Capacity Claims

Plaintiff's official-capacity claims against Defendants for damages are subject to dismissal. When state officials are sued in their official capacities for damages, they are not "persons" subject to suit within the meaning of § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for damages are not considered persons for the purpose of a § 1983 claim).  Moreover, state officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under

4

the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when state officials are sued for damages in their official capacity.").  For these reasons, the Court will dismiss Plaintiff's official-capacity claims for damages for failure to state a claim upon which relief may be granted and for seeking damages from Defendants who are immune from such relief.

### B.  Individual-Capacity Claims

#### 1.  Defendant Plappert

Because the complaint contains only one allegation against Defendant KSP Warden Plappert, which the Court addresses separately below, the Court assumes that Plaintiff seeks to hold Defendant Plappert liable regarding all of Plaintiff's other claims against her based on her supervisory role at KSP.  However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "[P]roof of personal involvement is required for a supervisor to incur personal liability."  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Thus, to the extent Plaintiff's claims against Defendant Plappert are not based upon personal allegations against her but upon her supervisory role, the claims must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Fourth/Fourteenth Amendment Claims

#### a. Deprivation of Property

Plaintiff seems to assert that his Fourth Amendment rights were violated because certain items were missing from his personal property when he was released from the RHU. "Prisoners do not have a Fourth Amendment right to be free from the seizure of their personal property." *Marceleno v. Cal. Dep't of Corr. & Rehab*, 1:17-cv-01136-LJO-GSA-PC, 2019 U.S. Dist. LEXIS 85641, at *11 (E.D. Cal. May 21, 2019) (citing *Hudson v. Palmer*, 468 U.S. 517, 536 (1984)); *see also Morgan v. Wetzel*, No. 20-2881-KSM, 2020 U.S. Dist. LEXIS 240146, at *9 (E.D. Pa. Dec. 21, 2020) ("The protections of the Fourth Amendment regarding personal property do not apply in the prison context.") (citing *Hudson v. Palmer*, 468 U.S. at 538) (O'Connor, concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects.")).

Moreover, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Thus, to state a constitutional claim for the deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt v. Taylor*, 451 U.S. at 543-44; *see also Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983) (holding that "in § 1983 damage suits claiming the deprivation of a property interest

6

without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate").  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Thus, even if Plaintiff had made specific allegations against any Defendant with regard to the deprivation of some of his personal property, his claims against them would fail under both the Fourth and Fourteenth Amendments and must be dismissed for failure to state a claim upon which relief may be granted.

### b. Procedural Due Process

Plaintiff also claims that his procedural due process rights were violated under the Fourteenth Amendment when he was placed in the RHU for 15 days, from October 25, 2023, until November 9, 2023, due to an "illegal detention order" issued by Defendant Denny.  Plaintiff further states that when he explained "potential illegality" of the detention order to Defendant Plappert, she failed to failed to intervene.

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  515 U.S. 472 (1995).  Under *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence."  *Id*. at 484-87.  Courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an atypical and significant hardship.  *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

The Sixth Circuit has held that placement in segregation for a relatively short period of time does not require the protections of due process. *See Sandin*, 515 U.S. at 484 (disciplinary segregation for 30 days did not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant); *cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Thus, because Plaintiff's placement in segregation was so brief, only 15 days, and therefore does not constitute an atypical and significant hardship implicating a Fourteenth Amendment liberty interest under Sixth Circuit case law, the Court will also dismiss his procedural due process claim against Defendant Denny for failure to state a claim upon which relief may be granted. Moreover, because there is no underlying claim, Plaintiff's claim against Defendant Plappert for failing to intervene must also be dismissed for failure to state a claim. *See Greene v. Crawford Cnty.*, 22 F. 4th 593, 615 (6th Cir. 2022) ( "To succeed on a claim for failure to intervene, a plaintiff must show that there was an 'underlying constitutional violation.'") (quoting *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413 (6th Cir. 2015)).

### c. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011);

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Thus, because his allegations do not suggest disparate treatment, the Court will also dismiss equal protection claims for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

**a. Excessive-Force**

The Eighth Amendment prohibits the use of excessive force against inmates held in a correctional facility. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). An inmate who brings an excessive use of force claim must show the officer "acted with a sufficiently culpable state of mind, and the alleged wrongdoing must be objectively harmful enough to establish a constitutional violation, [and] that the defendant acted 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

Plaintiff first alleges that Defendant Alexander sprayed OC spray into his cell twice on November 23, 2023, after Plaintiff failed to comply with a direct order to "surrender his smock." The Sixth Circuit has "repeatedly described the use of a taser or pepper spray as a proportional level of force in response to a prisoner's refusal to follow orders . . . ." *Johnson v. Scootsman*, 79 F.4th 608 (6th Cir. 2023) (citing *Sams v. Quinn*, No. 17-1419, 2017 U.S. App. LEXIS 20558, at *6-7 (6th Cir. Sept. 7, 2017) (refusing an order to accompany an officer to the infirmary); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (refusing an order to "exit the shower"); *see also Davis v. Agosto*, 89 F. App'x 523, 526 (6th Cir. 2004) (refusing an order to present hands for handcuffing); *Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (refusing an order to leave strip cage). In light of this jurisprudence, the Court concludes that Plaintiff's allegations fail to show that Defendant Alexander used excessive force against Plaintiff by twice spraying OC spray into Plaintiff's RHU cell after Plaintiff refused to follow Defendant Alexander's order to surrender his smock. Thus, these excessive force claims must be dismissed for failure to state a claim upon which relief may be granted.

However, the Court will allow an excessive force claim to proceed against Defendant Alexander in his individual capacity based upon the allegation that Defendant Alexander had another KSP officer spray OC spray into Plaintiff's cell on November 24, 2023, for no apparent reason.

### b. Deliberate Indifference to Health/Safety

The Court next turns to Plaintiff's claim that Defendant Alexander ignored Plaintiff's request that his cell be decontaminated after Plaintiff noticed that OC spray stains remained on both his cells walls and floors. The Court construes this as an Eighth Amendment claim for deliberate indifference to Plaintiff's health/safety.

To state an Eighth Amendment claim for deliberate indifference to health/safety, a prisoner must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the prisoner to allege that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* For the subjective component, the prisoner must allege that the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Id.* (citation omitted)

Here, Plaintiff has not alleged serious harm, or explained how being housed in a cell with OC spray stains on the walls and floor put him at substantial risk of serious harm. Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### c. Conditions of Confinement

The Court construes Plaintiff's allegation that Defendants Alexander and Denny denied him a mattress and a smock in the RHU for at least 14 hours as an Eighth Amendment conditions-of-confinement claim. Courts have regularly held that denying a prisoner a mattress or certain pieces of clothing for a relatively short period of time does not violate the Eighth Amendment.

This is presumably because these allegations alone do not implicate serious harm, or a substantial risk of serious harm, under the objective standard described above. *See Grissom v. Davis*, 55 F. App'x 756, 757 (6th Cir. 2003) (allegations of seven-day deprivation of mattress and blanket did not "allege facts that, if proven, would rise to the level of the serious deprivation . . . required to support an Eighth Amendment claim"); *Jones v. Toombs*, 77 F.3d 482 (6th Cir. 1996) (unpublished table disposition) (requiring inmate to sleep on floor for a two week period does not violate the Eighth Amendment) (citing *Schroeder v. Kaplan*, No. 93-17123, 1995 U.S. App. LEXIS 18915, at *6 (9th Cir. 1995) (requiring prisoner to sleep on floor for four weeks does not violate the Eighth Amendment)); *Valdes v. Evans*, 5:19CV-P4-TBR, 2019 U.S. Dist. LEXIS 12037, at *11 (W.D. Ky. Jan. 24, 2019) ("A . . . one-week period without a mattress where an inmate does not allege any specific harm from going without it does not give rise to a constitutional violation."); *Lee v. Wagner*, 1:17-cv-474, 2017 U.S. Dist. LEXIS 92636, at *9 (W.D. Mich. June 16, 2017) (eight-day deprivation of mattress not a violation); *Bodman v. Dennis*, No. 1:11-cv-600, 2011 U.S. Dist. LEXIS 94592, at *20 (W.D. Mich. Aug. 24, 2011) ("Plaintiff's allegation that he was  . . . made to sleep on the floor for eight days constitutes only a minor inconvenience; it falls short of demonstrating the sort of inhumane conditions that implicate the Eighth Amendment."); *see also Freeman v. Miller,* 615 F. App'x 72, 77 (3d Cir. 2015) (denial of clothing and mattress for seven days did not violate Eighth Amendment).

Thus, the Court will dismiss Plaintiff's Eighth Amendment conditions-of-confinement claims against Defendants Alexander and Denny for failure to state a claim upon which relief may be granted.

**IV.**

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's official-capacity claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1),(2) for failure to state a claim upon which relief may be granted and for seeking seeks monetary relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that Plaintiff's individual-capacity claims against Defendants Plappert and Denny; his Fourth/Fourteenth Amendment deprivation-of-property claim; Fourteenth Amendment procedural due process and equal protection claims; Eighth Amendment deliberate indifference to health/safety claims; and Eighth Amendment conditions-of-confinement claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claim of excessive force against Defendant Alexander shall proceed, as set forth above.  In allowing this claim to proceed, the Court passes no judgment upon its merit or upon the ultimate outcome of this action.

Because no claims remain against them, **the Clerk of Court is DIRECTED to terminate Defendants Crews, Plappert, and Denny as parties to this action**.

The Court will enter a separate Service and Scheduling Order to govern the claim it has allowed to proceed.

Date:  June 24, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendant Alexander
4414.011

13